UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

_____

BRETT MICHAEL PEPPER,
as next friend for M.P., a minor

    Plaintiff,

CASE NO. 1:20-CV-00583

v

EDWARDSBURG PUBLIC SCHOOLS,
RYAN MARKEL, and
KATIE VANBELLE
    Defendants.

HON. JANET T. NEFF

---

Matthew L. Wikander (P65160)
Charissa C. Huang (P75501)
Anurima Deshpande (P83808)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
100 Monroe Center, N.W.
Grand Rapids, MI 49503
616-774-8000
mwikander@shrr.com
chuang@shrr.com
adeshpande@shrr.com

---

## AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Brett Michael Pepper, as next friend for M.P., a minor plaintiff, by and through his attorneys, Smith Haughey Rice & Roegge, and for his Complaint against Defendants states as follows:

### JURISDICTION AND VENUE

1.    This suit is brought, and jurisdiction lies pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et. seq., and 42 U.S.C. § 1983, as more fully set forth herein.

2.    Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives the district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

3. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391 in that this is the judicial district in which the events giving rise to these claims occurred.

5. In addition, the amount in controversy in this matter exceeds the sum or value of $75,000.00 exclusive of interest and costs.

## THE PARTIES

6. Plaintiff incorporates by reference the preceding paragraphs above as if fully stated herein.

7. Brett Michael Pepper (hereinafter "**Mr. Pepper**") is the father of M.P., a minor, who at all relevant times to this Complaint, was a resident of the State of Michigan.

8. At all relevant times, Defendant Edwardsburg Public Schools (hereinafter "**EPS**") has been a Public School District that maintains its principal administrative offices at 69410 Section Street, Edwardsburg, MI 49112. The District is a recipient of federal financial assistance as defined within 34 C.F.R. § 106.2(h), and is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

9. Defendant Ryan Markel is currently a resident of the State of Michigan, and at all relevant times to this Complaint, held the position of Principal of Edwardsburg High School.

10. Defendant Katie VanBelle is currently a resident of the State of Michigan, and at all relevant times to this Complaint, held the position of Behavioral Intervention Specialist at Edwardsburg High School.

## GENERAL ALLEGATIONS

11. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

12. During the summer of 2017, when M.P. was 12 years old, she was sexually assaulted.

13. She participated in the Edwardsburg Summer Music Camp, organized and facilitated by EPS. The Music Camp participants were elementary and middle school students who had finished grades four through eight.

14. M.P. became acquainted with Cody Adkins through her participation in the program.

15. Cody Adkins was 16 years old at that time, and EPS had placed him in the position of a Mentor over the younger elementary and middle school students who participated in the program.

16. Towards the end of the Music Camp, Cody and M.P. took a walk outdoors. At first, Cody was being very nice, but once they made it into a more wooded area, Cody began to get undressed. M.P. asked Cody what he was doing, and he responded, "I'm doing you." M.P. repeatedly said, "Please don't," while physically struggling to prevent Cody from raping her. Cody became very angry throughout the physical struggle and forced M.P. to perform oral sex.

17. When he was finished with the act, Cody told M.P. that if she told anyone what happened, he would "ruin" her at school and put her dead body in the lake. Then, Cody left the scene of the assault, and M.P. ran home.

18. However, Cody told some of his friends about the act, while omitting the crucial fact that he forced M.P. into the act. His friends then told others, and the rumor spread among students in EPS. The students, then, began to taunt M.P., and she was branded with the nicknames "Sucks for Starbucks" and "Fish Tank." Once the rumors and bullying began, M.P. confided in her friends that incident was a

forced violation, a sexual assault. Some of M.P.'s friends did not believe her, which was devastating to her.

19. The trauma of the sexual assault and the bullying at school substantially and severely affected M.P.'s ability to focus on academic achievement throughout eighth grade. However, M.P. did not tell her parents about the sexual assault until June of 2018, and thus throughout the 2017-2018 school year, M.P.'s parents erroneously believed that the setbacks in M.P.'s academic performance were due to typical adolescent struggles and teenage rebellion. In June of 2018, M.P. was finally able to tell her parents what happened, and her parents immediately arranged for her to be in counseling.

20. However, upon entry into ninth grade, the bullying continued and even worsened due to Cody's presence in the same school building, at Edwardsburg High School, including but not limited to M.P. being taunted for "giving head" to Cody; Cody's friends, upon anticipating her use of school-issued computers, typing "Sucks for Starbucks" into the username field for M.P. to find; and M.P. being bombarded by groups of girls who accused her of being a "slut" and falsely accusing Cody of sexual assault.

21. The aforementioned bullying took place under the watchful eye of EPS school officials who took no measures to quell the bullying which occurred on a daily basis.

22. In addition, prior to the start of the 2018-2019 school, M.P. parents made repeated attempts to set up a meeting with EPS. After a meeting was finally set up a week before school started, M.P.'s parents disclosed to Leslie Ostrander, the Guidance Counselor at Edwardsburg High School, the details of the sexual assault, and the fact that the perpetrator was a student at the school who had participated in the music camp. Then, within the first few weeks of the school year, in September 2018, M.P. told Katie VanBelle, the Behavioral Intervention Specialist at Edwardsburg High School, the specific facts of the sexual assault by Cody Adkins. M.P. also informed Ms. VanBelle about the aforementioned bullying.

4

23. Within a few weeks of M.P.'s disclosure of the facts of the sexual assault to Ms. VanBelle, M.P.'s father, Mr. Pepper, also provided factual details of the sexual assault to Ryan Markel, Principal of Edwardsburg High School and Josh Bourne, Assistant Principal of Edwardsburg High School. Mr. Pepper's recounting of the facts to Mr. Markel specifically stated that M.P. was physically forced against her will to perform oral sex, and that Ms. VanBelle had been informed of and knew the specific identity of the perpetrator, who was a student at the school.

24. EPS never took any measures to conduct an investigation into the reported assault of M.P. by the individual who EPS had placed in the position of a Mentor.

25. EPS's failure to perform any type of investigation is not surprising, however, and is made even more egregious by the fact that Cody's assault upon M.P. was just the most recent in a string of numerous assaults that Cody had perpetrated upon multiple female students, which had been reported to EPS, and in response to which EPS had failed to conduct any appropriate investigation or take any remedial measures. EPS had received notice, and EPS school administrators and employees had actual knowledge of three other assaults by Cody, prior to receiving notice of Cody's assault upon M.P.

26. In particular, Cody sexually assaulted three female students in three separate incidents in 2016 and 2017. These assaults were all reported to EPS.

27. EPS also had actual knowledge that Cody had been disseminating child pornography, prior to Cody's sexual assault of M.P. The Edwardsburg Police Department had specifically interviewed Cody at Edwardsburg High School, in April of 2016, during which time Cody admitted that he had disseminated child pornography. Evidence from Cody's cell phone showed that he had discussed with other accomplices that they could earn money for the dissemination of child pornography.

28. Despite actual knowledge by EPS administrators, officials, and employees regarding the reports of Cody assaulting female students and Cody disseminating child pornography, EPS continued to

place Cody in the position of a Mentor to middle school and elementary school students for the summer music program, touting Cody as "Mr. Edwardsburg," and embracing Cody as its chosen performer as the school mascot for Edwardsburg High School sporting events.

29. Further, upon being informed of the specific facts of the sexual assault against M.P. and the ensuing bullying directly related to the sexual assault, EPS also took no measures to keep M.P. separated from Cody, or to keep Cody away from other future victims. For instance, out of all the students EPS could have placed M.P. next to while serving detention that fall semester, EPS placed M.P. right next to Cody for the duration of the detention period.

30. Meanwhile, school employees and officials intentionally failed and refused to provide M.P. with appropriate and supportive services. By way of example, when M.P. was wrestling with a decision as to whether to report the sexual assault to law enforcement authorities and discussed her thought process with employees in the school counseling office, Ms. VanBelle shared directly with M.P. that Cody had been named in several other sexual assault allegations, and that reporting the crime would likely just "make things worse" for her. Such "counseling" adhered to the trend by EPS employees in the counseling office and school administrators, to ignore the known substantial risk to female students as posed by the sexually hostile environment at Edwardsburg High School, and in particular, the substantial risk to female students arising from Cody's behavior. For instance, EPS employees in the counseling office had also "counseled" other victims who had reported being sexually assaulted by Cody, to "forgive" Cody. This destructive "counseling" by EPS employees naturally caused M.P. to feel as if "Cody could do anything he wanted" which resulted in serious emotional and mental distress, and dissuaded M.P. from reporting a serious crime.

31. M.P.'s interest in school declined, her grades slipped, she began to self-harm – to the point of needing medical attention – and her parents determined that they had no other choice than to move her outside of EPS for her wellbeing and safety.

32. Astoundingly, immediately after EPS school officials and employees received notice that M.P.'s parents intended to disenroll her from EPS (when her parents requested her school records), EPS retaliated against the family by making a false report of child abuse against M.P.'s parents to Child Protective Services ("CPS").

33. Specifically, on December 13, 2018 at approximately 8:45 a.m., M.P.'s parents emailed Mr. Markel, the Principal, notifying him that M.P. would be leaving the school district. By approximately 12:53 p.m. of the same day, CPS had been contacted by EPS with a report of "abuse" against M.P.'s parents, and a case worker was placed in charge of the investigation. While the report contained details of purported "abuse" by the parents, it made no mention of behavioral issues caused by the sexual assault. The report of "abuse" was not only factually baseless, but also, the alleged abuse was supposed to have taken place months earlier, in October. Thus, even if the report had been made in good faith, which it was not, it would have been made in violation of applicable reporting rules for mandatory reporters.

34. As a result of EPS's false and retaliatory reporting, the family was, over several months, put through the turmoil and expense of being under an invasive and insulting investigation. In the end, as expected, CPS determined that the alleged abuse claim against M.P.'s family was entirely unsubstantiated.

35. To give M.P. a chance at recovery, her parents enrolled her in Compass Rose Academy in Wabash, Indiana for the remainder of the 2018-2019 school year. This enrollment in Compass Rose Academy had been delayed due to the false report made to CPS and the subsequent investigation.

36. M.P. thrived both socially and academically while at Compass Rose.

37. As such, and because M.P. had made so much progress while at Compass Rose, her parents determined that they would move her back home to Edwardsburg and attempt to start anew in the 2019-2020 school year with the public high school.

38. On the first day of school in 2019, M.P.'s mother met with Mr. Bourne for the purpose of implementing educational provisions and accommodations for M.P.'s return. At this time, a discussion regarding Cody Adkins transpired with Mr. Bourne. Mr. Bourne stated at that time that Cody's name had "crossed his desk numerous times." At the same meeting, Mrs. Pepper requested an evaluation for her daughter under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, to assist M.P. in planning for the upcoming school year. Mrs. Pepper specifically asked Mr. Bourne if a written request was needed at that time. Mr. Bourne told her that he would speak directly with Mr. Markel regarding the Section 504 request, and that this verbal communication would suffice as the formal request for the 504 evaluation.

39. However, after relying upon Mr. Bourne's assurance, Mrs. Pepper never received a single communication from Mr. Markel, Mr. Bourne, or any other administrator or employee of EPS, in response to her request regarding the evaluation for M.P.

40. In addition, when M.P. returned to Edwardsburg High School in the fall of 2019, the bullying of M.P. by numerous students which had arisen directly from the sexual assault seamlessly picked up where it left off in the previous year as described above, and EPS school officials and employees continued to intentionally disregard and failed to take any remedial measures with respect to the bullying.

41. M.P.'s parents observed that M.P. began to experience significant loss to the academic and social progress which she had made the previous semester at Compass Rose. However, Mr. Bourne's default response to their requests was to direct them to Mr. Markel, who was entirely nonresponsive to the parents' requests.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

42. In addition, Mr. Markel would intentionally avoid interactions with M.P. and her parents at school.

43. Based on the school's prior knowledge of allegations of sexual assault against Cody and the school's inaction, it was clear to M.P.'s parents that the school did not have her best interests at heart.

44. The entirely complacent and dismissive approach by EPS school administrators with respect to M.P.'s education forced M.P.'s parents to once again disenroll her from the public school district in which they live and enroll her in a neighboring school district for the remainder of the 2019-2020 school year.

**STATEMENT OF CLAIMS**
**COUNT I – VIOLATIONS OF TITLE IX, 20 U.S.C. §1681(a), et seq., AGAINST DEFENDANT EPS**

45. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

46. Title IX's statutory language states, "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

47. Plaintiff is a "person" under the statutory language of Title IX.

48. Defendant EPS is subject to Title IX as a recipient of federal financial assistance within the meaning of Title IX. 34 C.F.R. § 106.2(h).

49. Defendant EPS is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

50. Defendant EPS failed to carry out its duties to investigate and take corrective action under Title IX in 2016, 2017, 2018 and 2019, despite "appropriate persons" having actual knowledge of sexual assault and dissemination of child pornography committed by Cody Adkins.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

51.     Defendant EPS had actual knowledge of a substantial risk that Cody would sexually assault girls, and yet it failed to take any steps to investigate the complaints and furthermore continued to put him in a position of trust and authority that deeming someone a "mentor" to young students inevitably enforces.

52.     Even if EPS had not been provided with the exact details of every incident in which Cody assaulted other girls or the particular contents of the child pornography he disseminated, EPS employees and officials knew sufficient facts such that they reasonably could have responded with remedial measures to address the kind of harassment and bullying as a direct result of sexual assault that was reported.

53.     Furthermore, even if EPS officials had doubted the veracity of the allegations regarding Cody assaulting other girls or committing other sex crimes, EPS's duties under Title IX had been triggered.

54.     Defendant EPS acted with deliberate indifference to known acts of sexual assault and sexual harassment by:

  a. Failing to investigate and address known sexual assault, as required by Title IX;

  b. Failing to institute appropriate remedial measures in light of the actual knowledge of officers, employees, and agents of EPS regarding sexual assault, as required by Title IX;

  c. Failing to institute appropriate remedial measures in light of actual knowledge of officers, employees, and agents of EPS regarding bullying and harassment directly as a result and connected with sexual assault, as required by Title IX;

  d. Continuing to unreasonably tout the perpetrator as a Mentor to young students.

55.     As a direct and/or proximate result of defendant's actions and/or inactions through its officers, employees, and/or agents, plaintiff has suffered and continues to suffer injuries and damages, including but not limited to shock, emotional distress, physical manifestations of emotional distress, mental distress, embarrassment, humiliation, loss of self-esteem, disgrace, fright, grief, and loss of enjoyment of life.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

## COUNT II – VIOLATIONS OF 42 U.S.C. § 1983 AGAINST DEFENDANTS EPS, RYAN MARKEL, AND KATIE VANBELLE

56. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

57. The statutory language of 42 U.S.C § 1983 provides, "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

58. Defendant EPS, through its officers, employees, and/or agents' acts and omissions were performed under the color of state law in its capacity as a public school district and were performed knowingly with deliberate indifference to M.P.'s wellbeing and safety.

59. Defendant EPS, through its officers, employees, and/or agents, knew that Cody posed a substantial risk to young female students in the school and disregarded that risk by failing to take reasonable measures to abate it.

60. Defendant EPS, through its officers, employees, and/or agents, also knew that M.P. was being sexually harassed and bullied at school as a result of the sexual assault and ignored and refused to take reasonable measures to abate the harassment and bullying.

61. Defendant EPS, through its officers, employees, and/or agents', deliberate indifference deprived M.P. of the right to be free from sexual assault and sexual harassment.

62. As a direct and/or proximate result of defendant EPS's actions and/or inactions through its officers, employees, and/or agents, plaintiff has suffered and continues to suffer injuries and damages, including but not limited to shock, emotional distress, physical manifestations of emotional distress,

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

mental distress, embarrassment, humiliation, loss of self-esteem, disgrace, fright, grief, and loss of enjoyment of life.

63. Defendant Markel, in his professional and personal capacity, having information of a widespread pattern of constitutional violations of several previous sexual assaults by Cody Adkins available that showed a strong likelihood that Cody would engage in similar behavior in the future, as well as having information of a widespread pattern of constitutional violations available of ensuing sexual harassment and retaliatory bullying relating to the assault that showed a strong likelihood that the sexual harassment and retaliatory bullying would continue, acted with deliberate indifference to known acts of sexual assault and the ensuing sexual harassment, and retaliatory bullying related to the assault by:

   a. Failing to investigate and address known sexual assault and ensuing harassment and retaliatory bullying;

   b. Failing to institute appropriate corrective measures in light of knowledge of known sexual assault and ensuing harassment and retaliatory bullying;

   c. Placing Cody in the position of a Mentor to middle school and elementary school students;

   d. Touting Cody as "Mr. Edwardsburg" and embracing Adkins as its chosen performer as the school mascot;

   e. Implicitly authorizing approving or knowingly acquiescing to the sexual assault and ensuing harassment and retaliatory bullying.

64. As a direct result of Defendant Markel's violation 42 U.S.C § 1983, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

65. Defendant VanBelle, in her professional and personal capacity, having information of a widespread pattern of constitutional violations of several previous sexual assaults by Cody Adkins

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation
SHRR\4923808.v1

available that showed a strong likelihood that Cody would engage in similar behavior in the future, as well as having information of a widespread pattern of constitutional violations available of ensuing sexual harassment and retaliatory bullying relating to the assault that showed a strong likelihood that the sexual harassment and retaliatory bullying would continue, acted with deliberate indifference to known acts of sexual assault and the ensuing sexual harassment, and retaliatory bullying related to the assault by:

    a. Failing to investigate and address known sexual assault and ensuing harassment and retaliatory bullying;

    b. Failing to institute appropriate corrective measures in light of knowledge of known sexual assault and ensuing harassment and retaliatory bullying;

    c. Implicitly authorizing approving or knowingly acquiescing to the sexual assault and ensuing harassment and retaliatory bullying;

    d. Callously informing Plaintiff of known instances of Cody's past sexual assaults and instructing Plaintiff that involving legal authorities would only make matters worse.

66. As a direct result of Defendant VanBelle's violation of 42 U.S.C § 1983, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**COUNT III – DISCRIMINATION UNDER
THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2402, et. seq.,
AGAINST DEFENDANTS EPS, RYAN MARKEL, AND KATIE VANBELLE**

67. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

68. MCL § 37.2402(a) provides that an "educational institution" shall not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex."

SHRR\4923808.v1

69. MCL § 37.2401 defines "educational institution" as used in MCL § 37.2402(a) as including a public institution, secondary school, local school system, and an agent of an educational institution.

70. At all relevant times, Defendant EPS was an "educational institution."

71. At all relevant times, Defendant Markel was an "agent of an educational institution."

72. At all relevant times, Defendant VanBelle was an "agent of an educational institution."

73. Defendant EPS violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

74. Defendant Markel, in his professional and personal capacity, violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

75. Defendant VanBelle, in her professional and personal capacity, violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

76. Despite Defendants' actual knowledge of the sexual assault and the ensuing harassment, and retaliatory bullying related to the assault, Defendants took no action to stop the harassment and retaliation against M.P.

77. As a direct and/or proximate result of Defendants' violation of MCL § 37.2402(a), plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

### COUNT IV – RETALIATION UNDER THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2701, et. seq. AGAINST DEFENDANTS EPS, RYAN MARKEL, AND KATIE VANBELLE

78. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

79. MCL § 37.2701 provides that "[t]wo ore more person shall not conspire to, or a personal shall not…[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation . . ." After Cody disseminated details of M.P.'s sexual assault, couching it as a consensual encounter, M.P. was subject to harassment and retaliatory bullying by other students.

80. Defendant EPS violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P. by students and employees under the control of Defendants, which acts were in retaliation for M.P. having asserted her right to not be subjected to retaliation and harassment.

81. Defendant Markel, in his professional and personal capacity, violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P., which were acts in retaliation for M.P having asserted her right to not be subjected to retaliation and harassment.

82. Defendant VanBelle, in her professional and personal capacity, violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P., which were acts in retaliation for M.P having asserted her right to not be subjected to retaliation and harassment.

83. Defendants had actual and constructive knowledge that the harassment was occurring, and turned a blind eye to it, choosing instead to avoid any discussions with M.P. and her parents about how to appropriately support her after the sexual assault and ensuing harassment.

84. Furthermore, when M.P.'s parents determined that this district was not responding appropriately to the circumstances and attempted to disenroll her for that reason, defendants EPS and Markel retaliated by lodging the false report regarding M.P.'s family to CPS.

85. Furthermore, when seeking counseling about telling legal authorities, defendant VanBelle warned M.P. that this would only make the retaliation and harassment worse.

86. As a direct result of the sexual harassment and retaliation, M.P. was forced to transfer schools twice.

87. As a direct and/or proximate result of Defendants' violation of MCL § 37.2701, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

### COUNT V – FIRST AMENDMENT RETALIATION AGAINST DEFENDANT EPS

88. Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

89. At all material times, M.P. was engaged in constitutionally protected speech by reporting her sexual assault to the administrators and staff at EPS, especially Katie VanBelle.

90. Katie VanBelle sought to dissuade M.P. from reporting the sexual assault by telling her it would only "make things worse."

91. Further, no steps were taken to curb M.P.'s harassment in school or keep her away from Cody. M.P. was forced to sit next to Cody during a detention period.

92. A false child abuse report was filed against her parents which forced the family to undergo an invasive and insulting investigation.

93. Defendant took the abovementioned adverse actions which would chill a person of ordinary firmness from continuing to engage in the protected speech.

94. Defendant EPS was motivated to take these adverse actions in whole or in part because of M.P.'s constitutionally protected speech.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

95. Defendant EPS's actions violated M.P.'s clearly established First Amendment rights and were unlawful in light of clearly established law. No reasonable person would have believed otherwise.

96. Defendant EPS's actions violated the First Amendment via 42 U.S.C. § 1983.

97. As a direct and/or proximate result of Defendants' violation of MCL § 37.2701, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

WHEREFORE, plaintiff requests this Court and the finder of fact to enter a Judgment in plaintiff's favor against defendant on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against defendant all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a) Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to shock, emotional distress, physical manifestations of emotional distress, mental distress, embarrassment, humiliation, loss of self-esteem, disgrace, fright, grief, loss of enjoyment of life, and other damages to be proved;

b) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c) Reasonable attorney fees, interest, and costs; and,

d) Other declaratory, equitable, and/or injunctive relief as appears to be reasonable and just.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4923808.v1

Date: September 4, 2020     By: */s/ Charissa C. Huang*
        Matthew L. Wikander (P65160)
        Charissa C. Huang (P75501)
        Anurima Deshpande (P83808)
        SMITH HAUGHEY RICE & ROEGGE
        Attorneys for Plaintiff
        100 Monroe Center, N.W.
        Grand Rapids, MI 49503
        616-774-8000
        mwikander@shrr.com
        chuang@shrr.com
        adeshpande@shrr.com

## **JURY DEMAND**

NOW COMES Brett Michael Pepper, as next friend for M.P., a minor plaintiff, by and through his attorneys, Smith Haughey Rice & Roegge, and hereby demands a trial by jury.

Date: September 4, 2020     By: */s/ Charissa C. Huang*
        Matthew L. Wikander (P65160)
        Charissa C. Huang (P75501)
        Anurima Deshpande (P83808)
        SMITH HAUGHEY RICE & ROEGGE
        Attorneys for Plaintiff
        100 Monroe Center, N.W.
        Grand Rapids, MI 49503
        616-774-8000
        mwikander@shrr.com
        chuang@shrr.com
        adeshpande@shrr.com