UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRETT MICHAEL PEPPER,
As next friend for M.P., a minor

CASE NO:  1:20-CV-00583

Plaintiff,

Hon. Janet T. Neff

vs

EDWARDSBURG PUBLIC SCHOOLS,
RYAN MARKEL, and KATIE VANBELLE,

Defendants.

---

Matthew L. Wikander  (P65160)
Charissa C. Huang  (P75501)
Anurima Deshpande  (P83808)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
100 Monroe Center NW
Grand Rapids, MI  49503
(616) 458-5283
mwikander@shrr.com
chuang@shrr.com
adeshpande@shrr.com

Mark T. Ostrowski  (P49761)
Jessica M. Stark  (P80647)
KLUCZYNSKI, GIRTZ & VOGELZANG
Attorneys for Defendants
3033 Orchard Vista Drive SE, Suite 308
Grand Rapids, MI  49546
(616) 559-8649
marko@kgvlaw.com
jesstark@kgvlaw.com

---

## DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND JURY DEMAND AND AFFIRMATIVE DEFENSES

NOW COME Defendants, Edwardsburg Public Schools, Ryan Markel and Katie VanBelle, by and through their attorneys, Kluczynski Girtz & Vogelzang, and in Answer to Plaintiff's Amended Complaint, state as follows:

1

## JURISDICTION AND VENUE

1.      This suit is brought, and jurisdiction lies pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et. seq., and 42 U.S.C. § 1983, as more fully set forth herein.

**ANSWER**      **Defendants deny that there is any legitimate basis for this lawsuit but do not contest jurisdiction.**

2.      Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives the district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

**ANSWER**      **Defendants do not contest jurisdiction.**

3.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**ANSWER**      **Defendants do not contest jurisdiction.**

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391 in that this is the judicial district in which the events giving rise to these claims occurred.

**ANSWER**      **Defendants do not contest jurisdiction.**

5.      In addition, the amount in controversy in this matter exceeds the sum or value of $75,000.00 exclusive of interest and costs.

**ANSWER**      **Defendants deny that Plaintiffs are entitled to any relief in this matter whatsoever.**

## THE PARTIES

6.      Plaintiff incorporates by reference the preceding paragraphs above as if fully stated herein.

**ANSWER      Defendants incorporate their answers to paragraphs 1 through 5.**

7.      Brett Michael Pepper (hereinafter "**Mr. Pepper**") is the father of M.P., a minor, who at all relevant times to this Complaint, was a resident of the State of Michigan.

**ANSWER      Admitted.**

8.      At all relevant times, Defendant Edwardsburg Public Schools (hereinafter "**EPS**") has been a Public School District that maintains its principal administrative offices at 69410 Section Street, Edwardsburg, MI 49112.  The District is a recipient of federal financial assistance as defined within 34 C.F.R. § 106.2(h), and is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

**ANSWER      Admitted.**

9.      Defendant Ryan Markel is currently a resident of the State of Michigan, and at all relevant times to this Complaint, held the position of Principal of Edwardsburg High School.

**ANSWER      Admitted.**

10.      Defendant Katie VanBelle is currently a resident of the State of Michigan, and at all relevant times to this Complaint, held the position of Behavioral Intervention Specialist at Edwardsburg High School.

**ANSWER      Admitted.**

## GENERAL ALLEGATIONS

11.     Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER     Defendants incorporate their answers to paragraphs 1 through 10.**

12.     During the summer of 2017, when M.P. was 12 years old, she was sexually assaulted.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

13.     She participated in the Edwardsburg Summer Music Camp, organized and facilitated by EPS.  The Music Camp participants were elementary and middle school students who had finished grades four through eight.

**ANSWER     Admitted.**

14.     M.P. became acquainted with Cody Adkins through her participation in the program.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

15.     Cody Adkins was 16 years old at that time, and EPS had placed him in the position of a Mentor over the younger elementary and middle school students who participated in the program.

**ANSWER     Admitted that Cody Adkins acted as a Mentor at one time in regard to the music camp.  The remaining allegations are neither admitted nor denied for the reason that**

4

**there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

16.     Towards the end of the Music Camp, Cody and M.P. took a walk outdoors. At first, Cody was being very nice, but once they made it into a more wooded area, Cody began to get undressed. M.P. asked Cody what he was doing, and he responded, "I'm doing you." M.P. repeatedly said, "Please don't," while physically struggling to prevent Cody from raping her. Cody became very angry throughout the physical struggle and forced M.P. to perform oral sex.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.  In futher answering, to the extent the allegations are intended to suggest that there was an assault during the music camp and/or on school property, it is denied.**

17.     When he was finished with the act, Cody told M.P. that if she told anyone what happened, he would "ruin" her at school and put her dead body in the lake. Then, Cody left the scene of the assault, and M.P. ran home.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

18.     However, Cody told some of his friends about the act, while omitting the crucial fact that he forced M.P. into the act. His friends then told others, and the rumor spread among students in EPS.  The students, then, began to taunt M.P., and she was branded with the nicknames "Sucks for Starbucks" and "Fish Tank."  Once the rumors and bullying began, M.P.

confided in her friends that incident was a forced violation, a sexual assault.  Some of M.P.'s friends did not believe her, which was devastating to her.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

19.     The trauma of the sexual assault and the bullying at school substantially and severely affected M.P.'s ability to focus on academic achievement throughout eighth grade. However, M.P. did not tell her parents about the sexual assault until June of 2018, and thus throughout the 2017-2018 school year, M.P.'s parents erroneously believed that the setbacks in M.P.'s academic performance were due to typical adolescent struggles and teenage rebellion.  In June of 2018, M.P. was finally able to tell her parents what happened, and her parents immediately arranged for her to be in counseling.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

20.     However, upon entry into ninth grade, the bullying continued and even worsened due to Cody's presence in the same school building, at Edwardsburg High School, including but not limited to M.P. being taunted for "giving head" to Cody; Cody's friends, upon anticipating her use of school-issued computers, typing "Sucks for Starbucks" into the username field for M.P. to find; and M.P. being bombarded by groups of girls who accused her of being a "slut" and falsely accusing Cody of sexual assault.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters**

asserted and Plaintiffs are left to their proofs at trial.  In further answering, no bullying or alleged mistreatment of M.P. while at school was ever reported to the school district or observed by any of its employees or agents.

21.     The aforementioned bullying took place under the watchful eye of EPS school officials who took no measures to quell the bullying which occurred on a daily basis.

**ANSWER     Denied.**

22.     In addition, prior to the start of the 2018-2019 school, M.P. parents made repeated attempts to set up a meeting with EPS.  After a meeting was finally set up a week before school started, M.P.'s parents disclosed to Leslie Ostrander, the Guidance Counselor at Edwardsburg High School, the details of the sexual assault, and the fact that the perpetrator was a student at the school who had participated in the music camp. Then, within the first few weeks of the school year, in September 2018, M.P. told Katie VanBelle, the Behavioral Intervention Specialist at Edwardsburg High School, the specific facts of the sexual assault by Cody Adkins.  M.P. also informed Ms. VanBelle about the aforementioned bullying.

**ANSWER     Denied.  In further answering, Mr. Pepper met with Ms. Ostrander and informed her of an alleged sexual assault of his daughter.  He reported that the assault took place in a location near their home with no apparent connection to any school activity or property.  He refused to divulge the name of the assailant stating he did not want to get the boy in trouble.  Ms. Ostrander attempted to persuade Mr. Pepper to identify the alleged assailant but he refused.  Ms. Ostrander had no way of knowing the identity of the perpetrator and had no means of taking remedial action.  When M.P. met with Ms. VanBelle she indicated that she was romantically interested in Cody Adkins and described consensual kissing at a location near her home off school property and unrelated to any**

school activity.  She related that Cody began an attempt to remove part of her clothing at which time she rejected his advances and left the scene.   At no time was there any report of bullying to Ms. Ostrander, Ms. VanBelle or any other school employee.

23.     Within a few weeks of M.P.'s disclosure of the facts of the sexual assault to Ms. VanBelle, M.P.'s father, Mr. Pepper, also provided factual details of the sexual assault to Ryan Markel, Principal of Edwardsburg High School and Josh Bourne, Assistant Principal of Edwardsburg High School.  Mr. Pepper's recounting of the facts to Mr. Markel specifically stated that M.P. was physically forced against her will to perform oral sex, and that Ms. VanBelle had been informed of and knew the specific identity of the perpetrator, who was a student at the school.

**ANSWER**     **Denied.  In further answering, Mr. Pepper met with Mr. Markel to express anger that his daughter had been asked to leave a homecoming dance, without the school notifying him, based on her and her boyfriend's disruptive behavior.  After this issue was discussed, Mr. Pepper mentioned to Mr. Markel that his daughter had been sexually assaulted in an incident off school property but did not disclose the name of the assailant. Mr. Markel responded by telling Mr. Pepper he should immediately report the assault to the police.  Mr. Pepper responded that he did not want to ruin the perpetrator's life and indicated he did not know or did not want to disclose the name of the perpetrator.  Based on the lack of information provided Mr. Markel was unable to address the situation. Several weeks later the Peppers decided to withdraw their daughter form Edwardsburg Public Schools.   There was no disclosure of the alleged assault to Mr. Bourne.**

24.     EPS never took any measures to conduct an investigation into the reported assault of M.P. by the individual who EPS had placed in the position of a Mentor.

**ANSWER**     **Denied.  In further answering, Ms. Ostrander and Mr. Markel are the only two school employees informed of an alleged assault prior to police involvement in February of 2019.  In both instances, Mr. Pepper refused to identify the alleged assailant indicating he did not want ruin the boy's life.  Thus, the school was unable to conduct any additional investigation.**

25.     EPS's failure to perform any type of investigation is not surprising, however, and is made even more egregious by the fact that Cody's assault upon M.P. was just the most recent in a string of numerous assaults that Cody had perpetrated upon multiple female students, which had been reported to EPS, and in response to which EPS had failed to conduct any appropriate investigation or take any remedial measures.   EPS had received notice, and EPS school administrators and employees had actual knowledge of three other assaults by Cody, prior to receiving notice of Cody's assault upon M.P.

**ANSWER**     **Denied.  In further answering, after Plaintiffs claim that M.P. was assaulted during the summer of 2017, three female high school students came forward on September 29, 2017 and reported that Cody Adkins had engaged in improper conduct.  One of the students reported that Cody grabbed her buttocks at a location off school property during the decorating of a homecoming float.  Another female student described an incident, off school property and unrelated to any school sponsored activity, involving her going out with Cody in his car and him parking the vehicle and asking her to climb into the back seat, which she did.  He proceeded to kiss her, touch her breasts and try to remove her clothing.  She objected and after she did so several times Cody stopped and drove her home.  The third incident was similar in that Cody invited the female student to his home where they were alone.  While seated on the couch, he began kissing, fondling and attempting to remove**

her clothing.  She objected and eventually Cody stopped.  None of the incidents occurred on school property or during school hours.  The school investigated and reports were made to law enforcement.  Cody was reprimanded.  Because these incidents were reported after the alleged assault of Plaintiff's daughter, they did not provide notice to the school district which would have allowed action which could have prevented the alleged harm and are irrelevant to any issue in this case.

26.     In particular, Cody sexually assaulted three female students in three separate incidents in 2016 and 2017.  These assaults were all reported to EPS.

**ANSWER**     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.  In further answering, Defendants had no knowledge of the alleged incidents until September 29, 2017, after M.P. was allegedly assaulted, when the three girls all reported the information on the same day.  See also, Defendants answer to paragraph 25.

27.     EPS also had actual knowledge that Cody had been disseminating child pornography, prior to Cody's sexual assault of M.P.  The Edwardsburg Police Department had specifically interviewed Cody at Edwardsburg High School, in April of 2016, during which time Cody admitted that he had disseminated child pornography.  Evidence from Cody's cell phone showed that he had discussed with other accomplices that they could earn money for the dissemination of child pornography.

**ANSWER**   Denied.  In further answering, Cody Adkins was disciplined for disseminating nude or partially nude photographs of a female student to his friends at school.  Upon information and belief, the incident involved two minors of roughly the same age and the

**initial disbursement of the photograph was consensual.  The school district reported the
incident to the police and Cody was disciplined.**

28.    Despite actual knowledge by EPS administrators, officials, and employees
regarding the reports of Cody assaulting female students and Cody disseminating child
pornography, EPS continued to place Cody in the position of a Mentor to middle school and
elementary school students for the summer music program, touting Cody as "Mr. Edwardsburg,"
and embracing Cody as its chosen performer as the school mascot for Edwardsburg High School
sporting events.

**ANSWER        Denied.  In further answering the allegations of inappropriate conduct made
against Mr. Adkins by three other female students, were all made after plaintiffs claim M.P.
was assaulted.  In addition, Cody did not act as a mentor after the alleged incidents were
reported.  Finally, the school district is not involved in the Mr. Edwardsburg contest which
is part of a pageant run by a local private company and the school district does not approve
of the designation "Mr. Edwardsburg"  and did not "tout" or promote Cody or any other
pageant contestant.**

29.    Further, upon being informed of the specific facts of the sexual assault against
M.P. and the ensuing bullying directly related to the sexual assault, EPS also took no measures
to keep M.P. separated from Cody, or to keep Cody away from other future victims.  For instance,
out of all the students EPS could have placed M.P. next to while serving detention that fall
semester, EPS placed M.P. right next to Cody for the duration of the detention period.

**ANSWER        Denied.  In further answering, no bullying was reported to the school.  Nor
did the school have any other information providing notice that M.P. was experiencing any
bullying.  In addition, the specifics of the alleged sexual assault were not reported to the**

11

**school as plaintiffs refused to identify the alleged assailant.  As a result it was not possible to separate the students.  Finally, M.P. was not placed next to Cody or any other student during detention.  Students serving detention are allowed to choose their own seats.**

28.     Meanwhile, school employees and officials intentionally failed and refused to provide M.P. with appropriate and supportive services.  By way of example, when M.P. was wrestling with a decision as to whether to report the sexual assault to law enforcement authorities and discussed her thought process with employees in the school counseling office, Ms. VanBelle shared directly with M.P. that Cody had been named in several other sexual assault allegations, and that reporting the crime would likely just "make things worse" for her.  Such "counseling" adhered to the trend by EPS employees in the counseling office and school administrators, to ignore the known substantial risk to female students as posed by the sexually hostile environment at Edwardsburg High School, and in particular, the substantial risk to female students arising from Cody's behavior.   For instance, EPS employees in the counseling office had also "counseled" other victims who had reported being sexually assaulted by Cody, to "forgive" Cody.  This destructive "counseling" by EPS employees naturally caused M.P. to feel as if "Cody could do anything he wanted" which resulted in serious emotional and mental distress, and dissuaded M.P. from reporting a serious crime.

**ANSWER     Denied.**

29.     M.P.'s interest in school declined, her grades slipped, she began to self-harm – to the point of needing medical attention – and her parents determined that they had no other choice than to move her outside of EPS for her wellbeing and safety.

**ANSWER**    The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.

30.    Astoundingly, immediately after EPS school officials and employees received notice that M.P.'s parents intended to disenroll her from EPS (when her parents requested her school records), EPS retaliated against the family by making a false report of child abuse against M.P.'s parents to Child Protective Services ("CPS").

**ANSWER**    **Denied.**

31.    Specifically, on December 13, 2018 at approximately 8:45 a.m., M.P.'s parents emailed Mr. Markel, the Principal, notifying him that M.P. would be leaving the school district. By approximately 12:53 p.m. of the same day, CPS had been contacted by EPS with a report of "abuse" against M.P.'s parents, and a case worker was placed in charge of the investigation. While the report contained details of purported "abuse" by the parents, it made no mention of behavioral issues caused by the sexual assault.  The report of "abuse" was not only factually baseless, but also, the alleged abuse was supposed to have taken place months earlier, in October. Thus, even if the report had been made in good faith, which it was not, it would have been made in violation of applicable reporting rules for mandatory reporters.

**ANSWER**    **Denied.  In further answering, M.P. reported to Ms. VanBelle on December 13, 2018, that her father had struck her and left bruises.  M.P.'s statement that her father had physically abused her required that a report be filed with CPS.**

32.    As a result of EPS's false and retaliatory reporting, the family was, over several months, put through the turmoil and expense of being under an invasive and insulting

investigation.  In the end, as expected, CPS determined that the alleged abuse claim against M.P.'s family was entirely unsubstantiated.

**ANSWER**   **Denied.**

33.     To give M.P. a chance at recovery, her parents enrolled her in Compass Rose Academy in Wabash, Indiana for the remainder of the 2018-2019 school year.  This enrollment in Compass Rose Academy had been delayed due to the false report made to CPS and the subsequent investigation.

**ANSWER**   **Defendants deny that there was any false report made to CPS.   The remaining allegations are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted.**

34.     M.P. thrived both socially and academically while at Compass Rose.

**ANSWER**   **The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

35.     As such, and because M.P. had made so much progress while at Compass Rose, her parents determined that they would move her back home to Edwardsburg and attempt to start anew in the 2019-2020 school year with the public high school.

**ANSWER**   **The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

36.     On the first day of school in 2019, M.P.'s mother met with Mr. Bourne for the purpose of implementing educational provisions and accommodations for M.P.'s return.  At this time, a discussion regarding Cody Adkins transpired with Mr. Bourne.  Mr. Bourne stated at that

time that Cody's name had "crossed his desk numerous times."  At the same meeting, Mrs.

Pepper requested an evaluation for her daughter under Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794, to assist M.P. in planning for the upcoming school year.  Mrs. Pepper

specifically asked Mr. Bourne if a written request was needed at that time.  Mr. Bourne told her

that he would speak directly with Mr. Markel regarding the Section 504 request, and that this

verbal communication would suffice as the formal request for the 504 evaluation.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the**
**reason that there is insufficient information to form a belief as to the truth of the matters**
**asserted and Plaintiffs are left to their proofs at trial.**

37.     However, after relying upon Mr. Bourne's assurance, Mrs. Pepper never received

a single communication from Mr. Markel, Mr. Bourne, or any other administrator or employee

of EPS, in response to her request regarding the evaluation for M.P.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the**
**reason that there is insufficient information to form a belief as to the truth of the matters**
**asserted and Plaintiffs are left to their proofs at trial.**

38.     In addition, when M.P. returned to Edwardsburg High School in the fall of 2019,

the bullying of M.P. by numerous students which had arisen directly from the sexual assault

seamlessly picked up where it left off in the previous year as described above, and EPS school

officials and employees continued to intentionally disregard and failed to take any remedial

measures with respect to the bullying.

**ANSWER     Defendants deny that they were provided notice or were otherwise aware of**
**any alleged bullying.  The remaining allegations are neither admitted nor denied for the**

reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.

39.     M.P.'s parents observed that M.P. began to experience significant loss to the academic and social progress which she had made the previous semester at Compass Rose. However, Mr. Bourne's default response to their requests was to direct them to Mr. Markel, who was entirely nonresponsive to the parents' requests.

**ANSWER     The allegations of this paragraph are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

40.     In addition, Mr. Markel would intentionally avoid interactions with M.P. and her parents at school.

**ANSWER     Denied.**

41.     Based on the school's prior knowledge of allegations of sexual assault against Cody and the school's inaction, it was clear to M.P.'s parents that the school did not have her best interests at heart.

**ANSWER     Defendants deny having notice or knowledge of the identity of the alleged assailant or that they did not have M.P.'s best interest at heart.  In regard to the description of what Mr. and Mrs. Pepper believed, the allegations are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

42.     The entirely complacent and dismissive approach by EPS school administrators with respect to M.P.'s education forced M.P.'s parents to once again disenroll her from the public

school district in which they live and enroll her in a neighboring school district for the remainder of the 2019-2020 school year.

**ANSWER**     **Defendants deny that the school was complacent or dismissive regarding M.P.'s education. The remaining allegations are neither admitted nor denied for the reason that there is insufficient information to form a belief as to the truth of the matters asserted and Plaintiffs are left to their proofs at trial.**

## STATEMENT OF CLAIMS
### COUNT I – VIOLATIONS OF TITLE IX, 20 U.S.C. §1681(a), et seq., AGAINST DEFENDANTS EPS

43.     Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER**     **Defendants incorporate their answers to paragraphs 1 through 42.**

44.     Title IX's statutory language states, "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

**ANSWER**     **This paragraph purports to state a conclusion of law to which no answer is required nor given.**

45.     Plaintiff is a "person" under the statutory language of Title IX.

**ANSWER**     **Admitted.**

46.     Defendant EPS is subject to Title IX as a recipient of federal financial assistance within the meaning of Title IX. 34 C.F.R. § 106.2(h).

**ANSWER**     **Admitted.**

47.     Defendant EPS is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

**ANSWER**    This paragraph purports to state a legal conclusion to which no answer is required.   In further answering, the allegations are denied as a misstatement of the applicable law.

48.    Defendant EPS failed to carry out its duties to investigate and take corrective action under Title IX in 2016, 2017, 2018 and 2019, despite "appropriate persons" having actual knowledge of sexual assault and dissemination of child pornography committed by Cody Adkins.

**ANSWER**    Denied.

49.    Defendant EPS had actual knowledge of a substantial risk that Cody would sexually assault girls, and yet it failed to take any steps to investigate the complaints and furthermore continued to put him in a position of trust and authority that deeming someone a "mentor" to young students inevitably enforces.

**ANSWER**    Denied.

50.    Even if EPS had not been provided with the exact details of every incident in which Cody assaulted other girls or the particular contents of the child pornography he disseminated, EPS employees and officials knew sufficient facts such that they reasonably could have responded with remedial measures to address the kind of harassment and bullying as a direct result of sexual assault that was reported.

**ANSWER**    Denied.

51.    Furthermore, even if EPS officials had doubted the veracity of the allegations regarding Cody assaulting other girls or committing other sex crimes, EPS's duties under Title IX had been triggered.

**ANSWER**    Denied.

52.     Defendant EPS acted with deliberate indifference to known acts of sexual assault and sexual harassment by:

    a.   Failing to investigate and address known sexual assault, as required by Title IX;

    b.   Failing to institute appropriate remedial measures in light of the actual knowledge of officers, employees, and agents of EPS regarding sexual assault, as required by Title IX;

    c.   Failing to institute appropriate remedial measures in light of actual knowledge of officers, employees, and agents of EPS regarding bullying and harassment directly as a result and connected with sexual assault, as required by Title IX;

    d.   Continuing to unreasonably tout the perpetrator as a Mentor to young students.

**ANSWER**     **a-d Denied.**

55.     As a direct and/or proximate result of defendant's actions and/or inactions through its officers, employees, and/or agents, plaintiff has suffered and continues to suffer injuries and damages, including but not limited to shock, emotional distress, physical manifestations of emotional distress, mental distress, embarrassment, humiliation, loss of self-esteem, disgrace, fright, grief, and loss of enjoyment of life.

**ANSWER**     **Denied.**

**COUNT II – VIOLATIONS OF 42 U.S.C. § 1893 AGAINST DEFENDANTS EPS, RYAN MARKEL, AND KATIE VANBELLE**

56.     Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER**     **Defendants incorporate their answers to paragraphs 1 through 55.**

57.     The statutory language of 42 U.S.C § 1983 provides, "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes

to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

**ANSWER**     **The allegations of this paragraph purport to state a conclusion of law to which no answer is required nor given.**

58.     Defendant EPS, through its officers, employees, and/or agents' acts and omissions were performed under the color of state law in its capacity as a public school district and were performed knowingly with deliberate indifference to M.P.'s wellbeing and safety.

**ANSWER**     **Denied.**

59.     Defendant EPS, through its officers, employees, and/or agents, knew that Cody posed a substantial risk to young female students in the school and disregarded that risk by failing to take reasonable measures to abate it.

**ANSWER**     **Denied.**

60.     Defendant EPS, through its officers, employees, and/or agents, also knew that M.P. was being sexually harassed and bullied at school as a result of the sexual assault and ignored and refused to take reasonable measures to abate the harassment and bullying.

**ANSWER**     **Denied.**

61.     Defendant EPS, through its officers, employees, and/or agents', deliberate indifference deprived M.P. of the right to be free from sexual assault and sexual harassment.

**ANSWER**     **Denied.**

62.     As a direct and/or proximate result of defendant EPS's actions and/or inactions through its officers, employees, and/or agents, plaintiff has suffered and continues to suffer injuries and damages, including but not limited to shock, emotional distress, physical

manifestations of emotional distress, mental distress, embarrassment, humiliation, loss of self-esteem, disgrace, fright, grief, and loss of enjoyment of life.

**ANSWER    Denied.**

63.    Defendant Markel, in his professional and personal capacity, having information of a widespread pattern of constitutional violations of several previous sexual assaults by Cody Adkins available that showed a strong likelihood that Cody would engage in similar behavior in the future, as well as having information of a widespread pattern of constitutional violations available of ensuing sexual harassment and retaliatory bullying relating to the assault that showed a strong likelihood that the sexual harassment and retaliatory bullying would continue, acted with deliberate indifference to known acts of sexual assault and the ensuing sexual harassment, and retaliatory bullying related to the assault by:

a.   Failing to investigate and address known sexual assault and ensuing harassment and retaliatory bullying;

b.   Failing to institute appropriate corrective measures in light of knowledge of known sexual assault and ensuing harassment and retaliatory bullying;

c.   Placing Cody in the position of a Mentor to middle school and elementary school students;

d.   Touting Cody as "Mr. Edwardsburg" and embracing Adkins as its chosen performer as the school mascot;

e.   Implicitly authorizing approving or knowingly acquiescing to the sexual assault and ensuing harassment and retaliatory bullying.

**ANSWER    a - e.  Denied.**

64.     As a direct result of Defendant Markel's violation 42 U.S.C § 1983, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**ANSWER    Denied.**

65.     Defendant VanBelle, in her professional and personal capacity, having information of a widespread pattern of constitutional violations of several previous sexual assaults by Cody Adkins available that showed a strong likelihood that Cody would engage in similar behavior in the future, as well as having information of a widespread pattern of constitutional violations available of ensuing sexual harassment and retaliatory bullying relating to the assault that showed a strong likelihood that the sexual harassment and retaliatory bullying would continue, acted with deliberate indifference to known acts of sexual assault and the ensuing sexual harassment, and retaliatory bullying related to the assault by:

a.  Failing to investigate and address known sexual assault and ensuing harassment and retaliatory bullying

b.  Failing to institute appropriate corrective measures in light of knowledge of known sexual assault and ensuing harassment and retaliatory bullying;

c.  Implicitly authorizing approving or knowingly acquiescing to the sexual assault and ensuing harassment and retaliatory bullying;

d.  Callously informing Plaintiff of known instances of Cody's past sexual assaults and instructing Plaintiff that involving legal authorities would only make matters worse.

**ANSWER    a – d.  Denied.**

66.     As a direct result of Defendant VanBelle's violation of 42 U.S.C § 1983, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**ANSWER     Denied.**

## COUNT III – DISCRIMINATION UNDER
## THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2402, et seq.,
## AGAINST DEFENDANTS EPX, RYAN MARKEL, AND KATIE VANBELLE

67.     Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER     Defendants incorporate their answers to paragraphs 1 through 66.**

68.     MCL  §  37.2402(a)  provides  that  an  "educational  institution"  shall  not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex."

**ANSWER     The allegations of this paragraph purport to state a legal conclusion to which no answer is required nor given.**

69.     MCL § 37.2401 defines "educational institution" as used in MCL § 37.2402(a) as including  a  public  institution,  secondary  school,  local  school  system,  and  an  agent  of  an educational institution.

**ANSWER     The allegations of this paragraph purport to state a legal conclusion to which no answer is required nor given.**

70.     At all relevant times, Defendant EPS was an "educational institution."

**ANSWER     Admitted.**

71.     At all relevant times, Defendant Markel was an "agent of an educational institution."

**ANSWER**     **Admitted.**

72.     At all relevant times, Defendant VanBelle was an "agent of an educational institution."

**ANSWER**     **Admitted.**

73.     Defendant EPS violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

**ANSWER**     **Denied.**

74.     Defendant Markel, in his professional and personal capacity, violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

**ANSWER**     **Denied.**

75.     Defendant VanBelle, in her professional and personal capacity, violated MCL § 37.2402 by subjecting M.P., because of her sex, to conduct of a sexual nature that had the effect of denying her the full benefit of the educational program at EPS and full and equal access to the use and privileges of educational opportunity.

**ANSWER**     **Denied.**

76.     Despite Defendants' actual knowledge of the sexual assault and the ensuing harassment, and retaliatory bullying related to the assault, Defendants took no action to stop the harassment and retaliation against M.P.

**ANSWER**     **Denied.**

77.    As a direct and/or proximate result of Defendants' violation of MCL § 37.2402(a), plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**ANSWER     Denied.**

## COUNT IV – RETALIATION UNDER THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2701, et. seq. AGAINST DEFENDANTS EPS, RYAN MARKEL, AND KATIE VANBELLE

78.    Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER     Defendants incorporate their answers to paragraphs 1 through 77.**

79.    MCL § 37.2701 provides that "[t]wo or more person shall not conspire to, or a personal shall not…[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation . . ." After Cody disseminated details of M.P.'s sexual assault, couching it as a consensual encounter, M.P. was subject to harassment and retaliatory bullying by other students.

**ANSWER     Defendants deny that they had knowledge of the alleged sexual assault or any harassment, retaliation or bullying.   In regard to the remaining allegation, Plaintiff purports to set forth a conclusion of law to which no answer is required nor given.**

80.    Defendant EPS violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P. by students and employees under the control of Defendants, which acts were in retaliation for M.P. having asserted her right to not be subjected to retaliation and harassment.

**ANSWER     Denied.**

81.     Defendant Markel, in his professional and personal capacity, violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P., which were acts in retaliation for M.P having asserted her right to not be subjected to retaliation and harassment.

**ANSWER**     **Denied.**

82.     Defendant VanBelle, in her professional and personal capacity, violated MCL § 37.2701 by allowing and failing to stop retaliation and harassment of M.P., which were acts in retaliation for M.P having asserted her right to not be subjected to retaliation and harassment.

**ANSWER**     **Denied.**

83.     Defendants had actual and constructive knowledge that the harassment was occurring, and turned a blind eye to it, choosing instead to avoid any discussions with M.P. and her parents about how to appropriately support her after the sexual assault and ensuing harassment.

**ANSWER**     **Denied.**

84.     Furthermore, when M.P.'s parents determined that this district was not responding appropriately to the circumstances and attempted to disenroll her for that reason, defendants EPS and Markel retaliated by lodging the false report regarding M.P.'s family to CPS.

**ANSWER**     **Denied.**

85.     Furthermore, when seeking counseling about telling legal authorities, defendant VanBelle warned M.P. that this would only make the retaliation and harassment worse.

**ANSWER**     **Denied.**

86.     As a direct result of the sexual harassment and retaliation, M.P. was forced to transfer schools twice.

**ANSWER**     **Denied.**

87.     As a direct and/or proximate result of Defendants' violation of MCL § 37.2701, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**ANSWER     Denied.**

## COUNT V – FIRST AMENDMENT RETALIATION AGAINST DEFENDANT EPS

88.     Plaintiff restates and realleges, as if fully set forth herein, all preceding paragraphs of these pleadings.

**ANSWER     Defendants incorporate their answers to paragraphs 1 through 87.**

89.     At all material times, M.P. was engaged in constitutionally protected speech by reporting her sexual assault to the administrators and staff at EPS, especially Katie VanBelle.

**ANSWER     Defendants deny that M.P. reported a sexual assault.**

90.     Katie VanBelle sought to dissuade M.P. from reporting the sexual assault by telling her it would only "make things worse."

**ANSWER     Denied.**

91.     Further, no steps were taken to curb M.P.'s harassment in school or keep her away from Cody.  M.P. was forced to sit next to Cody during a detention period.

**ANSWER     Denied.  In further answering, Defendants were not provided with notice of any alleged harassment or that Cody Adkins had allegedly assaulted M.P. and students in detention choose their own seats.**

92.     A false child abuse report was filed against her parents which forced the family to undergo an invasive and insulting investigation.

**ANSWER     Denied.**

93.     Defendant took the abovementioned adverse actions which would chill a person of ordinary firmness from continuing to engage in the protected speech.

**ANSWER     Denied.**

94.     Defendant EPS was motivated to take these adverse actions in whole or in part because of M.P.'s constitutionally protected speech.

**ANSWER     Denied.**

95.     Defendant EPS's actions violated M.P.'s clearly established First Amendment rights and were unlawful in light of clearly established law.  No reasonable person would have believed otherwise.

**ANSWER     Denied.**

96.     Defendant EPS's actions violated the First Amendment via 42 U.S.C. § 1983.

**ANSWER     Denied.**

97.     As a direct and/or proximate result of Defendants' violation of MCL § 37.2701, plaintiff has and will continue to suffer serious, severe, permanent, and painful injuries and damages, as more fully described above.

**ANSWER     Denied.**

**WHEREFORE, Defendants request that this Court enter a Judgment for no cause of action against Plaintiffs and in Defendants' favor.**

## AFFIRMATIVE DEFENSES

NOW COME Defendants, by and through their attorneys, Kluczynski, Girtz & Vogelzang, and in regard to Plaintiff's Complaint assert the following Affirmative Defenses:

1.     Plaintiffs have failed to allege a claim upon which relief may be granted.

2.     Plaintiffs' claims may be barred by an applicable statute of limitations.

3.   Defendants did not have notice of any bullying or other harassment allegedly directed toward M.P. while at school.

4.   Defendants did not have notice that M.P. had been subjected to the alleged sexual assault.

5.   No "appropriate person" employed by the school district had notice of the alleged sexual assault, bullying or harassment and there is no basis for holding defendants liable in this matter.

6.   Defendants object to the misjoinder and non-joinder of parties and claims.

7.   Plaintiffs' claims against the individual defendants are barred by qualified immunity and they cannot be held liable under Title IX, 20 U.S.C. § 1681.

8.   Plaintiffs' state law claims may be barred by the Governmental Tort Liability Immunity Act set forth at 691.1401 *et. seq.*.

9.   Some or all of the Defendants have immunity, absolute immunity and/or qualified immunity that bars the instant action in whole or in part *based on state law, federal law and statutes*; including, but not limited to, *Harlow v Fitzgerald,* 457 U.S. 800; 102 S.Ct. 2727 (1982); *Monell v Department of Social Services of City of New York,* 436 U.S. 658; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978); *Ross v Consumers Power Co. (on rehearing),* 420 Mich 567; 363 NW2d 641 (1984); *Nalepa v Plymouth CantonCommunity School District,* 207 Mich App 580; 525 NW2d 897 (1994).

10.  Plaintiffs have not alleged any basis upon which these Defendants could be held liable under the Michigan Elliott Larsen Civil Rights Act or federal law for the alleged misconduct of Cody Adkins.

11.  Defendants will rely upon all principles of contributory fault and or comparative fault available under state and federal law and specifically note that any harm caused to Plaintiffs was the result of the conduct of non-party Cody Adkins and M.P.'s own failure to make a timely report of the alleged wrongful conduct.

12.  Defendants acted reasonably at all times and complied with all sources of federal and state law.

13.  Plaintiffs may not have acted reasonably to mitigate any damages suffered.

14.  That injuries and damages as claimed by Plaintiffs may be excessive, exaggerated or not causally connected to the occurrence at issue and otherwise, maybe limited or barred by applicable statute or decisional law.

15.    Plaintiffs have not alleged a legitimate basis for application of vicarious liability.

16.    That the claims of liability against these Defendants are wholly groundless in fact and are not warranted by any existing law or even by good faith argument and are consequently frivolous and should be dismissed.  Notice is hereby given that dismissal against these frivolous claims against these Defendants will be sought and, should Plaintiffs refuse to dismiss these claims, these Defendants will seek all costs, attorney fees and sanctions allowable under applicable rules of law and court rule.

17.    Defendants hereby provide notice that they will show that any harm sustained by plaintiffs was caused by Cody Adkins and they intend to file a notice of non-party fault.

18.    Defendants reserve the right to plead additional Affirmative Defenses until the time of trial.

KLUCZYNSKI, GIRTZ & VOGELZANG

Attorneys for Defendants

Dated: October 26, 2020                    By:    /s/ Mark T. Ostrowski
                                           Mark T. Ostrowski (P49761)
                                           Jessica M. Stark  (P80647)
                                           Business Address and Telephone:
                                               3033 Orchard Vista Dr, SE, Ste 308
                                               Grand Rapids, MI  49546
                                               (616) 559-8649

## RELIANCE ON JURY DEMAND

NOW COMES the Defendants and hereby rely on Plaintiff's demand for jury trial previously filed in this matter.

KLUCZYNSKI, GIRTZ & VOGELZANG

Attorneys for Defendants

Dated:  October 26, 2020                    By:    /s/ Mark T. Ostrowski
                                           Mark T. Ostrowski (P49761)
                                           Jessica M. Stark  (P80647)
                                           Business Address and Telephone:
                                               3033 Orchard Vista Dr, SE, Ste 308
                                               Grand Rapids, MI  49546
                                               (616) 559-8649